UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-24156-CIV- GOODMAN
[CONSENT CASE]

ALBERT MONTAGUE,

     Plaintiff,

v.

SILVERSEA CRUISES LTD.,

     Defendant.

_____/

### ORDER ON PLAINTIFF'S SPOLIATION SANCTIONS MOTION

In July 2018, Plaintiff Albert Montague was a passenger on the *Whisper*, operated by Defendant Silversea Cruises Ltd., and was allegedly thrown head-first into a cabinet in his cabin suite when a chair collapsed as he sat on it. Montague alleges that the chair was either defective or previously broken and glued back together. Montague rejected medical assistance at the time but now contends in this lawsuit that he suffered significant brain injuries.

Two days after he filed this lawsuit on October 9, 2018, Montague's attorney wrote a letter to Silversea, demanding that Silversea "maintain and preserve the area and materials involved in the incident so that we may inspect the same." [ECF No. 23, p. 2]. The following month, however, Silversea **discarded** the chair during a long-scheduled

dry-dock and ship refurbishment. Montague filed a motion for spoliation sanctions because of Silversea's destruction of the chair. [ECF No. 23]. The motion asks for myriad sanctions, ranging from default judgment against Silversea to a permissible presumption/adverse inference at trial (i.e., that the chair would have favored his position and been unfavorable to Silversea).

For the reasons outlined in greater detail below, the Court **grants in part** and **denies in part** the motion. Specifically, Montague (and Silversea) will be able to present evidence at trial about the chair and the circumstances surrounding its unavailability, and the jury will be instructed that it *may* reach an adverse inference against Silversea *if* it were to determine that Silversea acted in bad faith (as opposed to acting negligently or grossly negligently or recklessly) in connection with the discarding of the chair. But the Court finds that entry of a default judgment would be unduly harsh and inappropriate even if the jury were to find bad faith.

## I.     Factual & Procedural Background

Montague's Complaint [ECF No. 1] asserts that Montague was a passenger of Silversea's *Whisper* on July 14, 2018. According to Montague, Silversea had negligently placed a defective and/or broken chair in his cabin. The chair had either been defective or previously broken and glued back together. The chair collapsed when he sat in it. When the chair broke, Montague was thrown head first into a cabinet and, as a result sustained significant brain injuries.

According to Silversea emails generated after Montague's fall (and attached as exhibits to the motion), Montague reported the fall to the Butler Manager, who removed the broken chair and offered medical assistance to Montague. [ECF No. 23-1]. The Butler Manager reported the incident to myriad ship employees, including the doctor, who said she had spoken to Montague but he said he did not then need any medical assistance. The broken chair was taken to the ship carpenter, who repaired it.

The repaired chair was returned to Montague's cabin the next day. The day after that, Montague met with a manager and advised that he was unhappy because the very same repaired chair had been returned to his cabin suite. According to the Silversea email memo, Montague said he believed the chair should have been permanently removed and "never used again." [ECF No. 23-1, p. 2]. Montague had shown a ship official photographs he had taken of the chair in broken condition. The repaired chair was removed later that day and another chair was *swapped* with one from another suite.

An October 19, 2018 email to the Captain explains that the safety officer "cannot say non-ambiguously that suite 514 chair is perfect, but it was repaired and is **being used now.** As per the Butlers information: guests suites chairs have **not been replaced for a long time** and chairs work orders are placed on and off." [ECF No. 23-1, p. 4 (emphasis added)].

This October 19, 2018 email was sent ten days after Montague filed his lawsuit. The Summons and Complaint were served on Silversea's registered agent on October 11,

2018. [ECF No. 6]. Silversea filed its answer and affirmative defenses on November 1, 2018 [ECF No. 7], approximately three weeks after Plaintiff's counsel sent the October 11, 2018 representation letter containing the preservation demand (described above).[1]

During a corporate representative deposition, Silversea conceded that the chair was not preserved and further admitted that it "should have kept the chair." [ECF No. 23-5, p. 2 of 2]. The corporate representative did not know much about the chair's destruction other than it happened sometime in November 2018. The corporate representative agreed that the chair was in fact disposed of after the preservation letter was received and after the lawsuit was filed. He had no explanation for Silversea's failure to preserve the chair as evidence. Finally, no one at Silversea consulted with counsel about whether it was advisable to destroy the chair.

After Montague filed his spoliation sanctions motion, Silversea filed an opposition response, and Montague filed a reply. [ECF Nos. 32; 33].

In its response, Silversea contends that the chair was removed from the ship and discarded in November 2018 "during a long-scheduled dry-dock and ship refurbishment in Freeport, Bahamas, during the time the ship was not in service." [ECF No. 32, p. 2]. During the refurbishment, which lasted from November 26, 2018 to December 19, 2018, all chairs in the guest suites were replaced and/or reupholstered "as just one part of a

---

[1]    The letter was sent by certified mail and the exhibit indicates that someone at Silversea signed for it on October 18, 2018. Silversea does not contend that it never received it.

wide-ranging vessel refurbishment that had been scheduled by Silversea well before the subject incident." [ECF No. 32, p. 2].

Silversea also explained that it has an "exemplar" of the same model chair which it made available to Plaintiff, and it notes that Montague has photographs of the very chair which he says collapsed. *Id.*

### a. The Parties' Contentions

#### i. Plaintiff's Contentions

Montague contends that (1) Silversea knew of its obligation to preserve the chair; (2) it knew that the specific chair itself would be critically important evidence; (3) it failed to preserve the chair; (4) it acted in bad faith; (5) he was prejudiced by the chair's destruction because his expert cannot directly examine it and the photographs he took of the chair are inadequate to allow a determination of whether the chair had been previously repaired; (6) the prejudice cannot be cured because his expert cannot examine a chair that no longer exists; and (7) he is entitled to severe, harsh sanctions for Silversea's spoliation of the chair at issue.

#### ii. Silversea's Contentions

Silversea contends that spoliation sanctions are unwarranted because the specific chair is not crucial to Montague's ability to prove his case and that Plaintiff failed to show that it acted in bad faith. In addition, it argues that the letter from Plaintiff's attorney did not describe (a) the nature of the incident, (b) what specifically occurred, (c) the precise

location of the incident, and (d) which materials were involved. Moreover, Silversea emphasizes that the letter mentions nothing about a chair and argues that this omission is "glaring" because counsel specifically demanded the preservation of *other* items (such as video records/CCTV, photographs, accident reports, incident reports, and other records). [ECF No. 32, p. 6].

Acknowledging that the chair's disposal was an "oversight" [ECF No. 32, p. 9], Silversea contends that this is not an indication of bad faith. It also points to a non-published case where evidence of a pre-planned vessel refurbishment was found to be a non-bad faith justification for the spoliation of evidence. Thus, Silversea urges, "Although Plaintiff's motion is rife with allegations, it offers no evidence that Silversea's failure to preserve the chair was anything more than on oversight." [ECF No. 32, p. 12].

### iii.   Plaintiff's Rebuttal Contentions

Plaintiff argues that the letter's failure to specifically demand preservation of the chair does not justify Silversea's position because (1) Silversea was on notice of the chair's involvement since the day of the incident; (2) Silversea knew about the chair's significance from the allegations in the Complaint, which it received before the chair was discarded; and (3) the vessel did not undergo refurbishment until after the notice outlined above was provided.

Plaintiff also takes issue with the defense theory that he can use evidence besides the chair to make his case. Specifically, he says that Silversea has advised that his expert

cannot disassemble the exemplar chair to replicate the joint which came apart, as it is the only exemplar chair available. He also argues that the exemplar (a) is not an accurate representation of the condition of the subject chair at the time of the incident, (b) cannot be used to verify the condition and functionality of the subject chair at the time of the incident, and (c) cannot offer insight into whether the subject chair had previously been repaired. And he argues that the existence of the photographs he took "does not mean that Plaintiff[] can determine from the photographs whether the subject chair had been previously repaired and/or previously malfunctioned." [ECF No. 33, p. 3].

## II.    Applicable Legal Standards and Analysis

### a.    Spoliation

Spoliation refers to the destruction of evidence or the significant and meaningful alteration of a document or instrument. *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003). But it is sometimes also defined as the "*intentional* destruction, mutilation, alteration or concealment of evidence, usually a document." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077, 2009 WL 3823390, at *13 (S.D. Fla. Nov. 16, 2009) (emphasis added) (internal citation omitted); *see also Se. Mech. Servs, Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. July 24, 2009) (stating that spoliation refers to "the intentional destruction or concealment of evidence").

The district courts in this Circuit have not always been consistent in providing a definition of "spoliation." Some definitions include the word "intentional," while others

do not.[2] Because the Eleventh Circuit's decisions in *Green Leaf Nursery*, 341 F.3d at 1308, and *Oil Equipment Co. Inc. v. Modern Welding Co. Inc.*, 661 F. App'x 646, 658-59 (11th Cir. 2016), do not include "intentional" in the definition of the destruction of evidence requirement for spoliation, the Court will not include that requirement here. *See Oil Equip. Co. Inc.*, 661 F. App'x at 652 ("Spoliation refers to the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.").

In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its *prima facie* case or defense, it is not enough that the spoliated evidence would have been relevant to a claim or defense. *Managed Care Sols. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1327-28 (S.D. Fla. 2010) (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); *see also Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (finding that although missing emails were relevant to the plaintiff's case, they were not

---

[2]      For example, the "intentional" component *is* included in the spoliation definitions in *Optowave Co., Ltd. v. Nitkin*, No. 6:05-cv-1083, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006), *Southeastern Mechanical Services, Inc.*, 2009 WL 2242395, at *2, and *Calixto*, 2009 WL 3823390, at *13. The "intentional" requirement is not included in *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). *Graff*, however, is a "not for publication" opinion based, in part, on Georgia law. *Id.* On the other hand, there is no "intentional" requirement found in the court's spoliation definition in *Corporate Fin., Inc. v. Principal Life Ins. Co.*, No. 05-20595-CIV, 2006 WL 3365606, at *2 (S.D. Fla. Nov. 20, 2006).

critical and would have been cumulative).

Parties can ask trial courts to permit them to introduce into evidence at trial the *circumstances* surrounding their opposition's failure to retain and produce evidence, including emails, even when the trial court rejects the request for an adverse inference jury instruction. *Managed Care Sols.*, 736 F. Supp. 2d at 1334.

A court has broad discretion to impose sanctions for litigation misconduct based on its inherent power to manage its own affairs. A finding of bad faith, however, is required to impose sanctions based upon the court's inherent power. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). The district court has broad discretion to control discovery, including the ability to impose sanctions on uncooperative litigants. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993).

In this Circuit, sanctions for spoliation of evidence may include "(1) dismissal of the case [or default judgment against the defendant]; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a presumption against the spoliator." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005); s*ee also Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010).

In this case, Plaintiff urges both the first and third types of sanction -- default judgment or, alternatively, imposition of an adverse inference.

But there are different types of adverse inferences, ranging in differing and ever-increasing levels of harshness. One type of inference results in a jury being instructed that

certain facts are deemed admitted and must be accepted as true. Another type results in the imposition of a mandatory, albeit rebuttable, presumption. A third type permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference.

As the party seeking spoliation sanctions, Plaintiff has the burden of proof. *See Walter*, 2010 WL 2927962, at *2 (citing *Floeter*, 2007 WL 486633, at *5) (emphasis added) ("[T]he party seeking [spoliation] sanctions must prove . . . first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was **crucial to the movant being able to prove its prima facie case or defense**."); *see also Managed Care Sols.*, 736 F. Supp. 2d at 1322.

i. Bad Faith Requirement

In this Circuit, "[a] party's failure to preserve evidence" rises to the level of sanctionable spoliation "only where the absence of that evidence is predicated on bad faith," such as where a party purposely "tamper[s] with the evidence." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997); *see also Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (holding no adverse inference from missing label because there was no indication of bad faith).

Although the Eleventh Circuit indicated in *Flury* that bad faith is only *a* factor to **consider** under Georgia spoliation law, 427 F.3d at 945, *Flury* does not stand for the

proposition that bad faith is not required in this Circuit for an adverse inference jury instruction based on spoliation of evidence. Several reasons support this conclusion.

First, *Flury* construed Georgia spoliation law (not federal or Florida spoliation law). Second, *Flury* was "a panel decision and as such did not overrule the prior panel decision in *Bashir*, requiring a showing of bad faith." *Managed Care Sols.*, 736 F. Supp. 2d at 1328 n.16 (noting that only the Supreme Court or an *en banc* decision from the Eleventh Circuit can judicially overrule a prior panel decision).

Third, in several cases following the 2005 *Flury* decision, the Eleventh Circuit specifically and unequivocally held that bad faith *is* required for an adverse inference instruction as a sanction for spoliation. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (internal quotation omitted) (noting that a showing of malice is not required to find bad faith but emphasizing that an adverse inference can be "drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith"); *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (holding that "a jury instruction on spoliation of evidence is required only" when bad faith is responsible for the absence of the evidence); *BP Prods. N. Am., Inc. v. Se. Energy Grp., Inc.*, 282 F. App'x 776, 780 n.3 (11th Cir. 2008) (holding that an adverse inference presumption was appropriate where the district court implicitly determined that the defendant's actions were predicated on bad faith).

Additionally, in its relatively recent *Oil Equipment* decision, the Eleventh Circuit

11

cited *Flury* for the rule that a dismissal sanction for spoliation "should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Oil Equip. Co.*, 661 F. App'x at 653 (citing *Flury*, 427 F. 3d at 944). The *Oil Equipment* decision went on to explain:

> With regard to the spoliator's culpability, this circuit does not require a showing of malice in order to find bad faith, but we do require something more than mere negligence. Generally, bad faith may be found where the plaintiff's actions are responsible for the spoliation of evidence and the plaintiff fully appreciated the significance of the evidence to the anticipated litigation.

*Id.* (internal citations and quotations omitted).

Phrased differently, mere negligence in losing or destroying records or evidence is insufficient to justify an adverse inference instruction for spoliation. *Bashir*, 119 F.3d at 931. The Eleventh Circuit's rule precluding an adverse inference in the face of simple negligence is that "it does not sustain an inference of consciousness of a weak case." *Id.* (internal quotation omitted); *see also Slattery v. Precision Response Corp.* 167 F. App'x 139, 141 (11th Cir. 2006).

Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even grossly negligent discovery conduct does not justify that type of jury instruction. *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424, 2009 WL 982460, at *7 (S.D. Fla. Apr. 9, 2009) (declining to order adverse inference even though party's performance in fulfilling discovery obligations was "clearly egregious" and even though the party's discovery failings "resulted from the

grossly negligent oversights of counsel").

Because this Circuit, unlike some others, requires bad faith before permitting an adverse inference jury instruction when there is spoliation of evidence, courts deny the requested instruction when no bad faith is shown. *Slattery*, 167 F. App'x at 141 (holding that employer's failure to produce documents did not justify an adverse inference because plaintiff had demonstrated "no evidence [of withholding] or tampering with any of the documents in bad faith"); *see also Penalty Kick Mgmt.*, 318 F.3d at 1293–94 (no evidence of bad faith in losing label at issue in lawsuit alleging improper disclosure of trade secrets).

In fact, district courts in our Circuit regularly deny adverse inference requests even when there is an indisputable destruction of evidence. *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336, 2010 WL 3894142, at *1 (S.D. Fla. Sept. 30, 2010) (denying motion to dismiss and for adverse inference jury instruction when doctor negligently failed to suspend her ordinary policy of purging inactive patient files after learning the information in those files was relevant to her disability claim); *Walter*, 2010 WL 2927962, at *1 (denying presumption inference instruction for missing broken deck chair in lawsuit for injuries sustained when plaintiff's deck chair collapsed while he was a cruise ship passenger); *Atlantic Sea Co., S.A. v. Anais Worldwide Shipping, Inc.*, No. 08-23079, 2010 WL 2346665, at *2 (S.D. Fla. June 9, 2010) (denying sanctions for failure to preserve spotlight and electrical wiring); *Calixto*, 2009 WL 3823390, at *13 (denying spoliation sanctions for missing

emails); *see also United States v. Barlow*, 576 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) (denying

sanctions for loss of PVC marker used to identify the location of a ship's grounding in a

lawsuit brought by the government for damage to underwater sanctuary resources when

defendant's boat ran aground).

Parties can establish the requisite bad faith through either direct or circumstantial

evidence. *Calixto*, 2009 WL 3823390, at *16. In order to demonstrate that a party destroyed

evidence in bad faith through circumstantial evidence, the movant must establish *all* of

the following four factors:

> (1) evidence once existed that could fairly be supposed to have been
> material to the proof or defense of a claim at issue in the case; (2) the
> spoliating party engaged in an affirmative act causing the evidence to be
> lost; (3) the spoliating party did so while it knew or should have known of
> its duty to preserve the evidence; and (4) the affirmative act causing the loss
> cannot be credibly explained as not involving bad faith by the reason
> proffered by the spoliator.

*Id.*; *see also Managed Care Sols.*, 736 F. Supp. 2d at 1331-32 (adopting four-factor test for

circumstantial evidence of bad faith).

When a party's actions lead to the destruction of evidence but were **not** done in

bad faith, then sanctions are inappropriate -- but this result "is not intended to preclude

[the prejudiced party] from introducing into evidence the facts concerning the failure to

preserve relevant [evidence]." *Socas*, 2010 WL 3894142, at *9. Thus, an order denying

spoliation sanctions would not be the death knell for Plaintiff's efforts to present

Silverseas' actions (or inactions) to a jury.

14

The Eleventh Circuit has not decided the appropriate evidentiary standard to use when the requested sanctions are based upon the Court's inherent powers. Nevertheless, the Undersigned finds persuasive a decision by U.S. Magistrate Judge Andrea Simonton in *In re Brican America LLC Equipment Lease Litigation*, 977 F. Supp. 2d 1287 (S.D. Fla. 2013).

In *Brican*, the court adopted two different evidentiary burdens, depending on the nature of the sanction imposed. For "issue-related" sanctions -- "those that are fundamentally remedial rather than punitive and do not preclude a trial on the merits" -- the proof must be by a **preponderance of the evidence**. *Id*. at 1293 n.6 (quoting *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 938 F. Supp. 2d 103, 104-05 (D.D.C. 2013)).

In contrast, for "fundamentally penal" sanctions -- such as "dismissals and default judgments, as well as contempt orders, awards of attorneys' fees, and the imposition of fines" -- the clear and convincing standard is used. *Id*. (quoting *Compton*, 938 F. Supp. 2d at 104-05). Judge Simonton used the preponderance of the evidence standard for the witness-tampering allegations insofar as the plaintiffs sought non-dispositive sanctions and applied the more-exacting clear and convincing standard to the request for dispositive sanctions.

In this case, Plaintiff has requested two types of sanctions, one (default judgment) is a fundamentally penal one, and the other (adverse inference) is an issue-related sanction, such as an adverse inference. They require proof by different burdens. Thus, to the extent Plaintiff is seeking a default judgment, he must prove entitlement by clear and

convincing evidence. To the extent he seeks an adverse inference, he must clear the preponderance of the evidence standard.

### ii.   Potential Consequences if No Bad Faith is Established

In prior decisions (and as noted above), the Court has categorized the "different types of adverse inferences," which include the types of sanctions that Plaintiff has requested in this case. *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, No. 12-22787-CIV, 2013 WL 1100063, at *3 (S.D. Fla. Mar. 15, 2013); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *9 (S.D. Fla. Apr. 5, 2011). "The harshest type" is a jury instruction "that certain facts are deemed admitted and must be accepted as true." *Commercial Long Trading Corp.*, 2013 WL 1100063, at *3. In the middle is "imposition of a mandatory, albeit rebuttable, presumption." *Id.* Finally, the "least-harsh type" is one that "permits a jury to presume that the lost evidence is relevant and favorable to the innocent party," but where "the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference." *Id.*

But none of these adverse inferences requested by Plaintiff is permitted without a finding of bad faith. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Bashir*, 119 F.3d at 931) ("In the Eleventh Circuit, 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'"); *see also Point Blank Sols.*, 2011 WL 1456029, at *1 (refusing to impose an adverse inference "unless there is evidence of bad faith").

The Court, however, must still consider two *other* potential broad categories of consequences (other than an adverse inference) if bad faith is not established: (1) excluding or limiting testimony and (2) permitting the jury to consider *evidence* of spoliation.

Moreover, these consequences are not necessarily tied to the Court's inherent power to impose spoliation sanctions; they can be imposed as discovery sanctions without a finding of bad faith. *See E.E.O.C. v. Troy State Univ.*, 693 F.2d 1353, 1358 (11th Cir. 1982) (reversing dismissal of the E.E.O.C.'s lawsuit where the EEOC's failure to comply with Court discovery orders was not in bad faith, and noting that the district court should have considered other available sanctions, such as limiting the EEOC's production of evidence); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) (holding that under Rule 37, "[a] court may impose lesser sanctions without a showing of willfulness or bad faith on the part of the disobedient party.").

Courts in this jurisdiction have imposed lesser sanctions than dismissal or adverse inferences absent a finding of bad faith. *See Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. Feb. 2, 2009) (upholding the exclusion of expert testimony because, "[e]ven if the plaintiffs did not act with malice when they spoliated evidence, the plaintiffs were the more culpable party and caused the manufacturers substantial prejudice.");[3] *Gess v.*

---

[3]     Although *Graff* is an unpublished opinion based in part on Georgia law, the Eleventh Circuit excluded expert testimony absent a specific bad faith finding. *Graff*, 310 Fed. App'x at 302.

17

*United States*, 952 F. Supp. 1529, 1560 n.50 (M.D. Ala. 1996) (noting that "[i]t does not appear initially that the defendant's conduct rises to the level of culpable conduct required in the Eleventh Circuit to warrant an entry of default judgment," but that "the plaintiffs may be entitled to some form of sanctions for the defendant's destruction of critical evidence").

Permitting Plaintiff to introduce evidence of spoliation at trial (and permitting Silversea to introduce evidence and make arguments to explain the loss of evidence without obtaining an adverse inference or a permissible adverse inference) is permitted without a bad faith finding. *See United States E.E.O.C. v. Suntrust Bank*, No. 8:12-CV-1325-T-33, 2014 WL 1364982, at *11 (M.D. Fla. Apr. 7, 2014) (allowing the EEOC to introduce evidence at trial of defendant's policies regarding preservation of its surveillance videos and its failure to preserve surveillance video evidence); *Floeter*, 2007 WL 486633, at *7 ("Courts have found that loss of evidence may be relevant and admissible for the jury's consideration, and that adverse inferences arising from such destruction can be argued by counsel in closing.");[4] *Socas*, 2010 WL 3894142, at *9 (denying the defendant's request for dismissal or adverse inference but noting that "this ruling is not intended to preclude [the defendant] from introducing into evidence the facts concerning this failure to

---

[4]     The Magistrate Judge who entered the order noted that the presiding District Court Judge would decide whether the evidence and arguments would be permitted at trial. *Id.*

preserve relevant documents"); *Managed Care Sols.*, 736 F. Supp. 2d at 1334 (denying sanctions motion but explaining that "this ruling does not foreclose the possibility that the plaintiff will be able to introduce evidence of the defendant's failure to retain relevant documents at trial").

Also, to analogize to the procedural rule governing the loss of electronically stored information ("ESI"), Federal Rule of Civil Procedure 37(e) permits a court to impose measures other than the severe ones listed in (e)(2) without finding that the party responsible for the failure to preserve had the requisite intent to deprive the opposing party of the spoliated evidence. Thus, the advisory committee notes to the rule explain that "subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e)(2) advisory committee's note to the 2015 amendment.

Furthermore, "the severe sanction of dismissal or default judgment is appropriate only as a last resort and, because it is an extreme remedy, 'should not be imposed if lesser sanctions will suffice.'" *In Matter of Complaint of Boston Boat III, LLC*, 310 F.R.D. 510, 517 (S.D. Fla. 2015) (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)). "A district court's power to impose sanctions for litigation misconduct is 'not unlimited,' as courts must 'wield it wisely and with restraint and discretion.'" *Id*. at 517 (citing *Ulysse v. Waste*

*Mgmt., Inc. of Fla.*, 617 F. App'x 951, 953 (11th Cir. 2015)).

### b. Evaluating the Factors

#### i. Existence of Chair

This is a non-issue. Silversea concedes that the chair existed until an unknown date in November 2018.

#### ii. Duty to Preserve Chair

Under the precise and specific circumstances here, the Court is not convinced by Silversea's argument [ECF No. 32, pp. 5-6] that it had no duty to preserve the chair because counsel's letter did not specifically pinpoint the chair as an item to be preserved. Even if Silversea did not know that a chair was involved in the incident when the letter was received, it surely knew that this case involved a collapsing chair by the time the lawsuit was served -- which was still several weeks before the chair was disposed of during refurbishing.

Moreover, Silversea's position is contradicted by the testimony of its own corporate representative, who conceded that the chair should have been preserved.

So Silversea had a preservation duty for the specific chair at issue.

#### iii. Is the Chair Crucial to Plaintiff's Case?

"In meeting the requirement to demonstrate that the spoliated evidence was crucial to the movant's ability to prove its *prima facie* case or defense, it is not enough that the spoliated evidence would have been relevant to a claim or defense." *E.E.O.C.*, 2017

WL 5068372, at *21 (citing *Managed Care Sols.*, 736 F. Supp. 2d at 1327-28) (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere).

Silversea submits that although the subject chair is *relevant* to Plaintiff's claim, it is not *crucial* because (i) the effect of its nonexistence can be mitigated; and (ii) Plaintiff can use other evidence already obtained to prove his case.

Because the photographs are insufficient to permit an expert to conclude whether the chair had collapsed before and then placed in Plaintiff's cabin after being repaired, the chair itself "was, in effect, the most crucial and reliable evidence available to the parties[.]" *Flury*, 427 F. 3d at 943. Similarly, the importance of the chair is further evidenced by the fact that Plaintiff's expert cannot verify the chair's condition and functionality. Inspecting an exemplar chair is not comparable because it does not permit an expert to reach any opinions about the <u>chair in question</u>.

### c.  Bad Faith

The Court recognizes that the chair at issue was removed during a scheduled refurbishment project. But that does not, in and of itself, conclusively establish the absence of bad faith. For example, to use a comparison with ESI, a party on notice of litigation and the relevance of evidence may well be under a duty to modify a document preservation policy and take steps to make sure that specific ESI is not purged or overwritten.

The Undersigned views Silversea's failure to preserve the chair at issue to be, at a minimum, negligent. Given the preservation demand letter and the specific allegations of the Complaint, it is probably not a stretch to conclude that the destruction of the chair was grossly negligent and perhaps even reckless. But that is not the same as bad faith.

Although Silversea relies on *Gordon v. NCL (Bahamas) Ltd.*, U.S. District Court for the Southern District of Florida, Case No. 18-cv-22334, ECF No. 93, the Undersigned does not find that three-and-a-half-page opinion persuasive here. In *Gordon*, the plaintiff had not yet filed the Complaint by the time the ship underwent refurbishments. In the instant case, both the demand/preservation letter and the Complaint were filed before the ship underwent a planned refurbishment. Silversea had ample time to remove the specific chair from the planned refurbishment project; the defendant in *Gordon* did not have that flexibility and ability.

On the other hand, the Undersigned is not prepared to conclude that Silversea did in fact act with the necessary bad faith to justify spoliation sanctions.

Instead, the Undersigned finds that the *jury* will be in the best position to evaluate Silversea's conduct and to determine whether it reached the requisite bad faith level. This approach is discussed favorably in the advisory committee notes to the 2015 Amendment to Rule 37. Specifically, those notes explain that a court could "conclude that the intent finding should be made by a jury." Fed. R. Civ. P. 37(e)(2) advisory committee's note to the 2015 amendment. The "intent to deprive" finding necessary for the harsh-type

sanctions in Rule 37(e), such as a presumption, is, for all practical purpose, the same as a bad faith finding necessary for an adverse inference.

In any event, assessing Silversea's position and determining whether it acted in bad faith will be a decision informed by, among other factors, the credibility of its witnesses -- a factor best evaluated in an evidentiary hearing or trial, where the witness's demeanor can be observed.

### III.    Conclusion

The Court **grants in part** and **denies in part** the spoliation sanctions motion. The Court will not (even if the jury were to find bad faith) enter a default or default judgment against Silversea. The parties will both be able to introduce evidence at trial about the circumstances surrounding the loss of the specific chair at issue. The jury will be instructed that it *may* reach an adverse inference (i.e., that the chair had previously collapsed and been negligently repaired before being placed back in the cabin suite) if, **but only if**, it finds that Silversea acted in bad faith. That decision, of course, will be made after it receives jury instructions on credibility, bias, and the evaluation of trial evidence.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 22, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record